UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

CAROLEE DEMPSEY

        Plaintiff,

v.

NAVY FEDERAL CREDIT UNION

        Defendant.

-------------------------------------------------------------

JAN 11 2011

COMPLAINT

CV 11- 0166

SUMMONS ISSUED

CIVIL ACTION NO:

FEUERSTEIN, J.

WALL, M.J.

## INTRODUCTION

1. This is an action for damages and declaratory judgment, brought by an individual consumer for Defendant's violations of the Fair Credit Billing Act (part of the Truth in Lending Act), 15 U.S.C. § 1666 ("FCBA") and Regulation Z issued thereunder, NYGBL § 349, and for nuisance and intentional infliction of emotional distress.

2. Plaintiff Carolee Dempsey brings suit based on Defendant's unfair billing practices and its merciless campaign to bully her into increasing her payments on alleged credit card debts by means of placing thousands of phone calls to her work and home phone over a nine month period, and by means of repeated verbal threats, including but not limited to Defendant's unlawful threats to terminate Plaintiff's child support payments and terminate her son's social security payments

## JURISDICTION AND VENUE

3. Jurisdiction is based on 15 U.S.C. § 1640 and 28 U.S.C. § 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201 and § 2202.

1

4. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue in this District is proper under 28 U.S.C § 1391 because many or all of the events complained of took place in this District and Plaintiff resides in this District.

## THE PARTIES

6. Plaintiff Carol Dempsey is a resident of Coram, NY in Suffolk County.

7. Defendant Navy Federal Credit Union ("NFCU") is a business entity with a principal place of business in Vienna, Virginia.

## FACTS

8. Defendant extended open-end consumer credit to Plaintiff under a Visa "N Rewards" credit card account ("the account").

9. Starting on or about October 1, 2009, and virtually every day thereafter for approximately the next nine months, Defendant would call Plaintiffs home phone number on average of 6-12 times per day.

10. Additionally, virtually every day without fail during that same time period, Defendant called Plaintiffs work place phone number on average of 6-12 times per day.

11. The calls to Plaintiff's office phone were usually made within a few minutes of every call that was made to Plaintiff's home phone.

12. Defendant made these calls as early as 8:30am until as late as 9:00pm.

13. When the calls first began in Fall 2009, Plaintiff would answer the phone and speak with Defendants employees who informed Plaintiff that they were attempting to collect a past due amount allegedly owed on the account.

14. Plaintiff requested multiple times that Defendants cease calling her at home or at her office regarding the account.

15. Defendant ignored Plaintiff's request and continued calling both the home and office phone number until on or about July 1, 2010.

16. By November 1, 2009, Plaintiff stopped answering her phone if she recognized Defendants' phone number on her caller ID, at which point Defendant began leaving voice mail messages each time a call was made.

17. Every day, from on or about November 1, 2009 until on or about July 1, 2010, Plaintiff would have an average of 6-12 messages on both her home and office voicemail from NFCU informing her that they were trying to collect a past due balance.

18. At various times during these phone calls Defendant threatened to terminate Plaintiff's child support payments, terminate Plaintiff's son's social security payments, and garnish Plaintiff's wages.

19. Plaintiff works from her home most of the time, from the hours of 10:00 am – 6:30 pm.

20. Defendant's wildly excessive phone calls to Plaintiff's home phone number were made during Plaintiffs prime work hours.

21. During this same time period, Defendant also made several phone calls to Plaintiff's former spouses asking them to speak with Plaintiff about paying the past due amount.

22. Defendant's unreasonable and outrageous actions significantly interfered with Plaintiff's use and enjoyment of her property.

23. Defendant's unreasonable and outrageous action caused Plaintiff severe emotional distress.

24.     Defendant made these unreasonably excessive and outrageous phone calls despite the fact that Plaintiff was receiving periodic statements and making payments on her credit card account.

25.     Plaintiff was not, however, making any purchases or using the card in any way.

26.     Beginning with the periodic statement with a closing date of April 23, 2010 ("the bill"), a charge for $150.00 appeared on Plaintiff's bill.

27.     The bill erroneously indicates that Plaintiff incurred a total of $150.00 in purchases and cash advances related to what Defendant describes as "Payment Reversal With Back Date."

28.     In addition, the bill indicates that Defendant received a payment of $125.00 from Plaintiff on March 24, 2010.

29.     In fact, Plaintiff had made a payment of $150.00 on March 5, 2010 and did not make a payment of $125.00 on March 24, 2010.

30.     The bill also indicates that Plaintiff is being charged interest of $98.14 on what the bill describes as a total of $150.00 in purchases and cash advances.

31.     Plaintiff did not make any such purchase or cash advance.

32.     By letter dated June 21, 2010, within 60 days after transmission of the bill, Plaintiff sent Defendant a written notice of the billing errors.

33.     Plaintiff never received a response form Defendant regarding these billing errors.

34.     Since having received Plaintiff's written notice, Defendant has not sent Plaintiff any regular monthly billing statements on her account and has not given Plaintiff any indication that it has corrected the billing errors, reversed the unlawful interest charges, and credited the payment it received.

35.     At all relevant times Defendant acted intentionally to cause harm to Plaintiff and impair Plaintiffs use and enjoyment of her property.

36. The unreasonable and unlawful actions complained of here impaired Plaintiff's use of her property and caused her to suffer actual damages.

37. Plaintiff's actual damages include emotional distress, , stress, crying, anxiety, difficulty performing work activities and sleeplessness.

## COUNT I
## FAIR CREDIT BILLING ACT, 15 U.S.C. § 1666 ("FCBA")

38. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

39. Defendant's description of Plaintiffs $150 payment as a purchase or cash advance on the bill is a billing error as defined by FCBA and Regulation Z.

40. Defendant's failure to properly credit Plaintiff's payment in time to avoid the imposition of interest and finance charges is a billing error as defined by FCBA and Regulation Z.

41. Defendant's following actions violated FCBA § 1666 and Regulation Z:

   a. Failing to send Plaintiff a written acknowledgement of its receipt of Plaintiff's notice within 30 days; and

   b. Failing to investigate and correct or explain billing errors identified in Plaintiff's written dispute within 2 billing cycles of receipt.

42. For all these reasons, Defendant is liable under 15 U.S.C. § 1640 for statutory damages, actual damages, attorney's fees, litigation expenses and costs, for a declaratory judgment that it has violated FCBA § 1666 and have forfeited the right to collect any disputed amount and the first $50 any finance charges related to the disputed amount.

## COUNT II
## NUISANCE

43. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

44. By engaging in the conduct complained of above, including, inter alia, the conduct described in paragraphs 8-38, Defendant caused a substantial and unreasonable interference with Plaintiff's right to the use and quiet enjoyment of her home.

45. As a direct and proximate result of such conduct Plaintiff has suffered actual damages including the impairment of her right to the use and quiet enjoyment of her home, emotional distress, stress, anxiety, crying, and sleeplessness.

46. Defendant and its employees and agents acted intentionally at all relevant times.

47. Defendant is liable to Plaintiff for the actual damages she sustained as a direct and proximate result of such conduct.

48. Plaintiff is entitled to an award of punitive damages from NFCU in an amount sufficient to punish it for its intentional and unreasonable conduct as well as to serve as a deterrent to NFCU and other creditors to prevent the occurrence of such egregious conduct in the future.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

50. Defendant engaged in extreme and outrageous conduct, including but not limited to:

   i. Defendant's placement of thousands of collection calls to Plaintiff at all hours, to Ms. Dempsey and her family's home phone.

   ii. Defendant's placement of thousands of collection calls to Plaintiff at all hours, to Ms. Dempsey's work phone.

   iii. Defendant's repeated threats to terminate Plaintiff's child support payments, and terminate Plaintiff's son's social security payments,

51.     At all relevant times, Defendant and its employees and agents, acted with intent to cause severe emotional distress. Specifically, upon information and belief, the above referenced conduct is part of a systematic policy and practice developed by Defendants to strong-arm alleged debtors into making payments by mercilessly harassing them over the phone.

52.     As a direct and proximate result of Defendant's outrageous and extreme conduct, Plaintiff suffered severe emotional distress which manifested itself in the form of stress, crying, anxiety, difficulty performing work activities and sleeplessness.

53.     Defendant is liable to Plaintiff for the actual damages she has sustained as a direct and proximate result of such conduct.

54.     Plaintiff is entitled to an award of punitive damages from NFCU in an amount sufficient to punish it for its intentional and extreme and outrageous conduct as well as to serve as a deterrent to NFCU and other creditors to prevent the occurrence of such extreme and outrageous conduct in the future.

## COUNT IV
## NYGBL § 349 (DECEPTIVE ACTS AND PRACTICES UNLAWFUL)

55.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

56.     Each of the deceptive acts and practices set forth above constitutes a violation of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

57.     These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

58.     Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices

7

are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

59. Specifically, upon information and belief, Defendant routinely threatens alleged debtors with collection actions that it may not lawfully take, including but not limited to threatening to take alleged debtors' child support and alleged debtors' social security and/or their family members' social security.

60. Likewise, upon information and belief, Defendant routinely threatens alleged debtors with garnishment, despite the fact that Defendant has not commenced any action against the alleged debtor, much less obtained any judgment.

61. Upon information and belief, the above referenced conduct is part of a systematic policy and practice developed by Defendants to strong-arm alleged debtors into making payments falsely claiming to have the ability to take actions that the law, in fact, does not permit.

62. Defendant's conduct and statements were materially misleading.

63. As a result of these violations of NYGBL §349, Plaintiffs suffered actual damages.

64. Upon information and belief, Defendant's violations were willful and knowing and committed in bad faith.

65. For these reasons, Plaintiffs are entitled to actual damages, three times the actual damages up to $1000, costs and reasonable attorneys fees pursuant to NYGBL § 349(h), declaratory judgment that Defendants' practices are deceptive as defined under § 349.

WHEREFORE Plaintiff respectfully demands judgment against Defendant as follows:

a. On COUNT I, FAIR CREDIT BILLING ACT, 15 U.S.C. § 1666, judgment against Defendants for statutory damages, actual damages, attorney's fees, litigation expenses and costs, declaratory judgment that they have violated FCBA and Regulation Z and have forfeited the right to collect any disputed amount and the first

$50 any related finance charge, and such other or further relief as the Court deems appropriate;

b. On COUNT II, NUISANCE, judgment against Defendant for actual damages and punitive damages;

c. On COUNT III, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, judgment against Defendant for actual damages and punitive damages; and

d. On COUNT IV, NYGBL § 349, judgment against all Defendants, actual damages, three times the actual damages up to $1000, costs and reasonable attorneys fees pursuant to NYGBL § 349(h), declaratory judgment that Defendants' acts and practices are deceptive, and such other or further relief as the Court deems appropriate; and

e. Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: January 10, 2011
White Plains, New York

Respectfully Submitted,

Daniel A. Schlanger, Esq.
One of Plaintiff's Attorneys

Plaintiff's Attorneys
Daniel A. Schlanger, Esq.
Peter T. Lane, Esq.
Schlanger & Schlanger, LLP
1025 Westchester Ave., Suite 108
White Plains, NY 10604
Ph: 914-946-1981
Fax: 914-946-2930